Good morning. May it please the Court, my name is Laura Crank. I'm here on behalf of the appellant. This case is about two issues. It's a Social Security case. It is whether the ALJ failed to include uncontroverted visual and hearing limitations in the RFC assessment to the vocational expert, and whether this resulted in a correct finding of whether she would return to her past work. And also whether the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. This case is resting on two fine issues. That is whether the visual limitations that Ms. Greene had and the hearing limitations that she had would prevent her from performing her past work as an administrative assistant. It seems like a small issue, but in this case, if she could not do her past work, she'd be found disabled. The job of administrative assistant requires excellent hearing and also good visual skills, good visual and acute visual ability. Here, Ms. Greene, it's uncontroverted that she has severe visual and hearing limitations. The judge did not find that she had any visual or hearing limitations in his RFC. Even if the judge did not believe that her visual and hearing limitations were severe, even if he thought they were non-severe, he needed to include them in the hypothetical to the vocational expert because even a non-severe impairment can affect the outcome of a case. As in this case, she had to take dictation, she had to take minutes. If she didn't have good hearing, she wouldn't be able to do her past job. The record showed that there was objective evidence that she had moderate to severe hearing limitations. There's evidence in the record that her boss said that she could no longer perform her past work at 37 years because her hearing was increasingly getting worse. We asked that the court remand the case on this issue so the judge can ask the vocational expert whether a person with hearing limitations and visual limitations, notably in this case, she had surgery on her eyes where she no longer produced tears. She had closed tear ducts, and this caused grainy, painful blinking of her eyes, blurry vision, and with extended, as an administrative assistant, and the need to have extended to spend extended time looking at a computer screen, this could easily prevent her from performing her past work. The other issue in this case is whether the judge ---- with respect to the vision issues, you talked about her having had Lasik surgery, and thereafter, I think that was the, was it Luna, I think? Yes. He wrote a letter and said ---- Let me get it here. I thought I had it here. In any event, he said basically that she had dry eyes, and then he gave a statement that essentially ---- Here, got it. Okay, so this is to whom it may concern. Since her surgery, she has had severe dry eyes for which she has used artificial lubrication aggressively. Drops during the day and anointment at night. And then he goes on to say, and she's using those daily, dry eyes can cause pain, blur, light sensitivity, a gritty sensation, a foreign body feeling, itching and redness. It can greatly disturb someone's quality of life. And then he says Donna's dry eye is a chronic medical condition that will bother her for the rest of her life, and her symptoms are best controlled with the above-mentioned therapies. Now, when he was questioning the VE, he referenced that letter. And the VE, as I recall, said it's too general. So he addressed it in the questioning. The letter itself doesn't opine in any way that it was a disabling condition, that it was under treatment. And with respect to the hearing, there was the same kind of issue raised with respect to hearing aids. In other words, yes, she had hearing problems. There was the letter from her former supervisor, Palomar, that said she had a hearing problem and it prevented her from taking notes at his meetings. But again, the notion that she had means that she was using or capable of using to alleviate, at least in part, the limitations, if you will. So what is it that you're saying that the ALJ should have done? Let's stay with the Luna letter. Well, actually, Your Honor, I don't believe that the vocational expert said it's too vague. I think that the judge was reading those limitations to the vocational expert and then himself said, wait, those are too vague, and then just went on and never tried to recontact the doctor or give any other type of visual limitations like this person can only occasionally look at a computer screen or anything else because he decided himself he thought they were vague. Therefore, either inadvertently or conclusion-driven, decided not to include any visual limitations in the RFC because the way that the doctor phrased them or because the judge couldn't figure out or at the time decided not to put them in the RFC in a way that was presentable to the vocational expert doesn't mean that they don't exist. In fact, it means they do exist. We know they exist. We know they're a severe impairment. And if it's a severe impairment, it needs to be included in the RFC. Even if it's a non-severe impairment, it needs to be included in the RFC because the whole case can turn. And specifically in this case, this isn't a case where somebody is, like, inspecting widgets. This is a case where even a non-severe impairment, but in this case we know it's a severe impairment, arguably it's a severe impairment, that's what we're arguing, would turn the case because she wouldn't be able to do her past work. And she'd be disabled when she turned 55. Also, I'd like to note that Dr. Luna... is a little harsh on the ALJ. I go to read the transcript, and it doesn't quite come across as you're characterizing it. So I want to be sure we're accurate about what the ALJ did here. I'm looking at AR 48 and 49 where he's talking about the dry eyes. And he's referring, he's summarizing Luna's letter. He says she is in status post-correction laser surgery. Since then, she's had dry eyes, need of artificial lubrication. And said dry eyes can cause pain, blurry vision, light sensitivity, gritty sensations, can bother the claimant for the rest of their life. I don't know what to make of that. So does that help you at all? And the V says no. And the question is too vague? Okay. And the answer is too vague. You're saying that he initiated that. It sounds like an interchange between the ALJ and the VE. Luna's already said it doesn't help me. I'm sorry. Just because the judge didn't understand the visual wording that was given by the doctor doesn't mean he could just ignore it and not give any limitations from it. Okay. So that's your point, isn't it? Yes. Yes. Okay. Your point is that he, what, should have? He should have either recontacted the doctor and said, can you give us something more specific so I can put this in a vocational context? Or many times what judges do is they'll say, well, okay, I want you to assume a person can only occasionally or frequently stare at a computer screen. Instead of just ignoring it and not including it as a severe impairment or even a non-severe impairment. So what do we make of when he goes to his next, his fourth hypothetical and goes through the elements? So she is basically saying she can sit and stand and walk for five of eight, which is not full-time work, a answer correct. Also says she's limited based on her visual and mental issues, which would also prevent work. Yes. So there would be no work. No work. Well, unfortunately, that's all included in the hypothetical. And if you can only work five hours, you're disabled. And so it doesn't really help us much there. Okay. And also what I, now, and since we're on the vision, I'd like to, we can move that into the subjective pain argument or the subjective symptom arguments, which is the issue that I see is the birdwatching. It's like a birdwatching case. It's really the only reason that he gave for rejecting her subjective complaints besides some vague objective that wasn't supported by the objective evidence. So she said the only things that she could do, she couldn't clean her house anymore. She can't take care of her pets anymore. She has to have them groomed for her. She has people come over to help her. He said, well, what do you do? Well, I sit on my porch or I sit in my kitchen and I watch birds. And so when he rejects her subjective complaints, he calls her a birdwatcher. And this is also in the first, why he finds it's in part of the first issue in regards to the visual limitations and in the subjective rejection of her subjective complaints. And I would present to this Court that when you have nothing else to do because you can't work anymore because you've been working for 40 years and now you can't work and really you can't clean your house, there's nothing you can do around your house, and you sit at your kitchen chair and you look out your window and you look at birds, that doesn't make you a birdwatcher. She has bird feeders, right? She does have bird feeders. That's what she was talking about? Yes. She looks at her birds. And the judge, just the thought of being working for 40 years, especially if she already had impairments her whole life and she has an impeccable work history, you get to the point where you're disabled anymore. She's had multiple surgeries. We're not even arguing about here because we're just at this one point because the case turns on these issues, that she's just left there sitting there watching birds to pass the time of day that she's not credible? A birdwatcher is a hobby that someone goes out and has binoculars and goes searching for birds and they look for little different traits about them. Got the point on the birds. The whole case is about birdwatching and I feel bad for this woman. I watch Goldfinch's bird feeders. Yes. My question ultimately is if this were to go back, both of her impairments, they're not severe, correct? I argue that they are severe. I argue that it's uncontroverted that it's severe because even if you have a moderate to severe hearing loss, then it's severe. Severe is a de minimis standard. Well, where's the evidence that she's wearing hearing aids, right? She has problems with hearing aids. But whether it's severe or not is arguable and it would go back on. I'm arguing that it's severe. It should be severe. But even if it's not, the first issue is they are severe. The second one is even if they're not, they have to be included. So if we were to instruct what the ALJ, what he should have put into the hypothetical, what, based on the record, is it exists? Well, I would. You better let me finish the question. Yes. What would be the instruction to the ALJ as to how to include the vision and the hearing loss issues? Well, I would recommend that the court either ask the judge to call a medical expert or to recontact her treating doctors. Or I'm also saying that the ñ and I think that would be sufficient. Or for him to, if he thinks it's too vague, he needs a reconstituting doctor or he needs to call a medical expert. Or if he thinks he can translate it himself, then he can make that attempt. But he didn't discuss that in his decision. No, I understand that. But that's questions for the other side. Yeah. And so if ñ but a vocational expert that has visual limitations and hearing limitations for a job like an administrative assistant, it's extremely unlikely that they're going to say that person's going to be able to return to their work. Thank you. If there's any other questions. May it please the Court. Jeffrey Chin of Beering on behalf of the Acting Commissioner of Social Security, Carolyn W. Colvin. I'd like to begin by clarifying a few things about social security law to prevent confusion about what is and is not at question here. The ALJ determined that the plaintiff had a residual functional capacity, which is the most that she could do despite her impairments. Only based on these impairments do you have questions to the vocational expert. So naturally, if the ALJ did not find that the individual had certain limitations, in this case alleged auditory and visual limitations, then naturally they're not presented to the vocational expert. Are you saying severe limitations or any limitations? Actually, Your Honor, the RFC is composed of limitations that implicate the ability to do basic work activity. While non-severe limitations are considered, as referenced on page 12 of the decision, that the ALJ considers all impairments severe otherwise. He only includes functional limitations, that is the RFC, based on credibly established limitations more than the minimum. Where does he explain why the hearing loss issue isn't an issue for RFC purposes? Since there's a letter from her employer to the very position that the RFC says she can return, where's the explanation to say that that hearing loss, which manifested itself as a limitation in the workplace, wasn't relevant to talk about and explain why he didn't include them? Well, it's not included, Your Honor, because the limitations were not established for two reasons. Let me explain. The letter from Supervisor Joseph Madrigal in 2007 listed limitations but stated that they existed for the past 12 years, the 12 years during which Klayment was successfully performing her past relevant work as an administrative assistant. In addition, this is not a medical – this is not medical evidence. It is a lay statement that is contradicted by other medical and nonmedical evidence in the record. It's not a contradiction. There was lots of evidence in the record that indicated that she did have a hearing loss and it was correctable by hearing aids. Yes, Your Honor. While she was working between 1989 and 2007, there are several records. For example, in the year April 2000, hearing aids were recommended. In December 2007, right after she stopped working, hearing aids were again recommended. But by October 27, 2009, plaintiff testified that she indeed had hearing aids in both ears. This is borne out by the observation at the consultative examination with Dr. Romualdo Rodriguez, who noted that Klayment made good interpersonal contact and was able to volunteer information spontaneously. Similarly, Klayment had no problems communicating answers or comprehend the ALJ's question at the administrative hearing. The only medical evidence in this case bearing on this, the opinion of State agency Dr. Arlene Wong opined that Klayment established no hearing or other communicative limitations, which is consistent with Klayment's performance at the CE and at the administrative hearing after she obtained hearing aids. And as I mentioned in my brief, Your Honor, a long line of precedent along with the In her application, the first item she listed was severe hearing disability and asked how the conditions limited her ability to work. I have trouble hearing words. My hearing loss has gotten worse. I can't stay focused. I strain to try to hear. Did he find that incredible? Oh, yes, Your Honor. If you wished, I would address plaintiff's credibility. Just to answer the question, did he find it credible or not credible, that statement? I don't think he specifically addressed that statement. Isn't he supposed to? I mean, it seems like you're arguing that he rejected or he didn't account for the hearing limitations. I think you're arguing, well, he didn't really accept them as limitations or they weren't sufficient enough to be limitations. There are references to those limitations numerous in her application and in the briefing and in the hearing. And I think the law, and you tell me if I'm right, it says that he either has to account for those hearing impairments or otherwise provide a basis for rejecting the objective medical of establishing that limitation. Is your argument that he didn't perceive it as objective medical? No. My point is that the letter from Supervisor Madrigal is not medical evidence. The medical evidence of hearing loss occurred at a time where Klayman did not have hearing aids. There is record in the evidence showing that once Klayman obtained hearing aids, that she had no problems with interpersonal contact and hearing as demonstrated through the seat. I guess, but you concede that he didn't use it in the hypothetical or account for it. And he didn't otherwise, or can you point to a statement where he rejects it, the ALJ? No, Your Honor. The reason the hearing limitations were not accounted for in the hypothetical is because the ALJ determined that it was not a functional limitation. Where did he make that determination? Well, Your Honor, the ALJ did not include auditory and visual limitations in the statement. He didn't account for their omission either. And there's lots of evidence suggesting that those are at least limitations and he didn't specifically find her not credible with respect to those. And the regulation says, we will consider the limiting effects of all of your impairments, even those that are not severe, in determining your residual functional capacity. And it goes on to say the adjudicator must consider limitations imposed by all of the individual's impairments, even those that are not severe. And I find absent from this ALJ's analysis any explanation that helps me understand why the evidence in the record that does point to hearing loss and dry eye problems don't have to be addressed. Well, Your Honor, the ALJ relied on, as a matter of medical opinion, the ALJ relied on the opinion of State agency physician Dr. Arlene Wong, who specifically Yes, but he can't ignore the other evidence. He can't ignore the fact that her employer, in the very position which the ALJ finds she can return, says that she had a limitation in the workplace where she couldn't take notes, and maybe she would have been fired if she hadn't had the history with that employer. We don't have any information to suggest that. That was just a benign comment. When the list of problems that he enumerated in his letter, he makes a specific point of saying that that one affected her ability to do part of the job for which she was responsible. Well, respectfully, I understand your interpretation, Your Honor, but I think that the question is whether or not the ALJ's interpretation of the record here is a reasonable one. Well, but I don't know what his interpretation is. He hasn't explained it. You're giving me legal conclusions or generalized statements. I'm looking in the ALJ's opinion for what he decided. The only thing that comes across on vision is the bird watching. He was pretty clear about that. And now it goes to vision. Well, yes, Your Honor, I respectfully submit that. I think the auditory limitations were considered both as part of general credibility finding as well as the fact that he credited the State agent's vision, who is the only piece of medical opinion evidence that specifically stated that plaintiff has established no hearing or other communicative limitations. And this is on page 827. In the absence of contrary opinion evidence about auditory limitations, the ALJ reasonably relied on the State agent's physician opinion to establish that there were no functional limitations. Okay. Turning our respect to the Luna's letter that the ALJ did put before the vocational expert, counsel has argued that if he found it too vague or inconclusive, it was a medical opinion, why didn't he reach out to Dr. Luna to find out more specifically so he could properly include it in the VE's hypothetical? Yes, Your Honor. In this case, the duty to read contact has been clarified by both case law and the regulations as only triggering when the evidence is inadequate or ambiguous to make a credibility determination. In this case, Dr. Luna's letter, in terms of functional limitations, specifically stated that claimant had severe dry eyes that required eye drops during the day and ointment at night. This is the type of – these are not work-related functional limitations, as you need to use eye drops or require minimal expenditure of time, and the ointment at night would be after working hours. The other, you know, quality of life considerations, while I have sympathies for the claimant in terms of I'm sure severe dry eyes causes, you know, irritation and difficulties, it does not bear on the ability to do basic work activity. And so the triggering of ambiguity or inadequacy does not apply in this case because there are no functional limitations established by Dr. Luna's letter. Is that true at the time of this ALJ's questioning? There have been some modifications in the regulation, haven't there? I don't believe that – I don't believe the regulations have changed on – oh, yes. I don't believe the changes in the last couple years have – this is old law, which recontact was based on ambiguity or inadequacy, Your Honor. Just turning briefly to credibility, again, plaintiff essentially makes a case of reinterpreting the evidence and setting forth her own argument about the, you know, demands of bird watching. But the question here isn't whether – Well, he did rely on daily activities inconsistent with disabling symptoms, right? That's correct. And that was that she lived alone, was able to drive a car, go grocery shopping, watch birds, and take care of dogs, two of which are puppies. Yes, Your Honor. Why does that render her testimony not credible, that she can't do that job that she was doing? Is it the birds or the puppies? Well, Your Honor, the basic idea is that even though claimant alleged that she was entirely disabled, the daily activities indicate, consistent with the ALJ's decision, that she still can perform a range of light work. Allow me to point to the testimony in the administrative hearing where claimant testified that she would only need a housekeeper once per month with the heavy work, started taking her dogs to groomers in 2008 because she could no longer perform the, you know, heavy cleaning, and now had to use the automatic car wash instead of self-washing her car, which suggested that she could no longer engage in strenuous physical activity, but that she could still perform the light work found by the ALJ's RFC finding. The idea here is not that claimant has no limitations. Clearly, she has substantial limitations, but that the limitations, you know, as embodied in the daily work activity do not credibly establish preclusion from all work activity. I understand that, but being unable to do light work, does that mean you can't have dogs, you can't watch birds, you can't live alone? I mean, I don't really quite see why that would result in an adverse credibility finding. Well, Your Honor, I respectfully submit that the ALJ only found daily activities as one factor of a multitude of credibility findings. Other factors included, for example, that the ALJ noted that the symptoms were treated conservatively with medication management. Treating physician Dr. Stephen Nichols stated they were treated aggressively. Well, Dr. Stephen Nichols quotes on page 725 of the record that physical therapy as the mainstay of claimant's treatment. So that's another factor that the ALJ pointed to. Similarly- He says he's treated it aggressively. Drops during the day and ointment at night. Oh, I see. I was not talking about Dr. Luna specifically. I was talking about other credibility factors. Where did he reject Luna over the one you were invoking? You said conservatively. Oh, I'm sorry. I was speaking to Dr. Stephen Nichols, which is because claimant's credibility involved a wide range of allegations, not just her eyes. And so some of the other limitations were found not credible because of conservative treatment. Another reason he rejected the testimony was that it fails to document that she has been hospitalized for her impairments other than surgery, and her wrists indicate that she has received significant active care other than for conservative routine maintenance. But she had 13 surgeries? The majority of her surgeries were on her wrists, Your Honor. She's had carpal tunnel release and a variety of hand impairments, including a deformed finger when she jammed her finger scrubbing a carpet. Sounds to me like she had a lot of real problems. Well, Your Honor, the ALJ did, in fact, that she was severely limited to a limited range of light work with only occasional posture activities and frequent manipulative activities. So with respect, Your Honor, you're right. She is severely limited. She did receive benefits at the next hearing, right? That's correct, Your Honor. There is a subsequent decision that awarded benefits based on significant deterioration as established by the medical evidence in the subsequent application. And are those, at that last hearing, limited to developments that occurred since this hearing? I'm sorry, Your Honor. The benefits that she was awarded at the following hearing? That's correct. Was that limited to events that occurred, developments following this hearing? Well, yes, Your Honor, because in this case, the prior ALJ decision here on November 16th, 2009, the subsequent application would be considering the time starting from November 17th and the subsequent medical evidence from that period of time. Unrelated, no overlap, no hearing? No, there is no overlap, Your Honor. Nothing on hearing, nothing on vision? Actually, the subsequent application found disability based on a completely different legal theory, essentially that she met listing 1.04 and 1.02, a major dysfunction of a joint leading to an inability to ambulate effectively. Okay. My question was, whatever the legal theory was, the evidence, did any of the evidence relate to deterioration in hearing or in vision? No, the subsequent ALJ decision did not point to or cite to any deterioration in vision or hearing. That was my understanding. Okay. That's correct. I see that my time is up. If there are no further questions, the Commissioner, respectfully, urges that this Court affirm the district court's decision. Thank you. Thank you. Thank you. Are you finished? Yes. The case is argued and will be submitted. Thank you, Your Honor. The Court will stand at recess for the day. All rise. This Court is in recess for the day.
judges: REINHARDT, FISHER, MURGUIA